IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 13-cv-01080-RBJ-BNB

KENNETH MCGILL,

    Plaintiff.

v.

CORRECTIONAL HEALTHCARE COMPANIES, INC. d/b/a/ "CORRECTIONAL HEALTHCARE MANAGEMENT, INC.";
CORRECTIONAL HEALTHCARE PHYSICIANS, P.C.;
CHC COMPANIES, INC.;
TED MINK, in his official capacity as Jefferson County Sheriff only;
JAMES BRILL, individually; and
GINA BATTENHOUSE, individually,

    Defendants.

## ORDER

This matter is before the Court on several motions in limine filed by both parties. The Court has considered the motions and the responses. Bearing in mind that each of the following rulings is subject to reconsideration if counsel or a witness "opens the door" to the admission of evidence that has preliminarily been excluded, the Court addresses the motions as follows:

## ORDER

**Plaintiff's Motion in Limine to Exclude Evidence of Plaintiff's Criminal History and Any Expert Testimony Related Thereto [ECF No. 135].**

Mr. McGill's prior criminal history does not fit the categories of Fed. R. Evid. 609 as impeachment evidence. Defendant's response suggests that he was in jail for his third DUI conviction and had been revoked from the inmate-outmate program. The defendant has not,

1

however, indicated that it has any evidence that the DUI history is likely to affect his employability. If defendant has such evidence, the Court might reconsider that part of this ruling. However, based on what is before the Court at this time, the motion is GRANTED as to his criminal history.

Near the end of the motion plaintiff inserts a short paragraph concerning "the jail file of several witnesses," seemingly almost by way of an afterthought. The motion does not explain what these files are or for what purpose the defendant might wish to use them. The response does not elaborate either. The Court is in no position to make an in limine ruling on the so-called jail files.

**Plaintiff's Motion in Limine to Exclude the Westword Article Relating to this Case [ECF No. 136].**

The motion is GRANTED. To the extent that the article might be offered to prove the truth of any of its contents, it is inadmissible as hearsay, and its reporting of the statements of other witnesses would be double hearsay. The Court is not persuaded that a newspaper article of this nature has such circumstantial guarantees of trustworthiness as to be admitted under Rule 807. If any of the persons quoted in the article is called as a trial witness, and if either party believes that the witness has testified contrary to statements quoted in the article, the reporter (whom defendant represents in its response will be available for testimony at trial) will have to be called to attest to the alleged prior inconsistent statement.

**Plaintiff's Motion to Strike Portions of Dr. Garlick's Expert Report and Preclude Testimony Regarding the Same [ECF No. 137].**

The motion is GRANTED. The Court has reviewed Dr. Garlick's report. ECF No. 137-1. The problem with the opinions described in the second paragraph under the "Miscellaneous"

heading (report p. 5) -- concerning whether plaintiff's PTSD, if any, might have been caused by alcoholism or the fact that the plaintiff was adopted or by some other childhood trauma -- is not that he is not qualified, at least as to alcohol addiction. The problem is that the opinions are not based on any disclosed factual foundation. As such, these opinions are nothing more than speculation and cannot pass even the relatively low threshold for relevance and reliability under Rule 702. Accordingly, the motion to strike that portion of the report is granted.

The portion of the report wherein Dr. Garlick expresses the opinion that Dr. Brill's actions were within the standard of care (which is inconsistent with CHC's wish to designate him as a nonparty at fault, as discussed below) appears to have been provided at a time when Dr. Brill was a named defendant. Plaintiff has dismissed his claim against Dr. Brill. Accordingly, this opinion does not appear to be relevant, and the motion is granted as to it. This is an example, however, where if plaintiff or counsel suggests or implies that Dr. Brill might have been negligent in any way, the door will have been opened to admit this evidence.

As for whether Dr. Garlick has the expertise to express the opinions contained under the heading "Timing of the Onset of Stroke" (page 4 of the report), the Court does not have sufficient information to answer that question. If the defendant maintains a desire to have Dr. Garlick express these opinions, then it should set an evidentiary *Daubert* hearing on that subject before trial.

Finally, plaintiff requests that the portion of the report under the heading "Second Stroke at Lutheran Hospital" be excluded. Motion at 8, n.3. That is based on plaintiff's representation that defense counsel has conceded that this portion of the report is not supported by radiological evidence and would not be raised at trial. Curiously, defendant does not address that matter in its response, instead taking the general position that Dr. Garlick is qualified to express opinions on

strokes. I will assume that plaintiff's representation regarding the "second stroke" is accurate. If the defendant disagrees and intends to present the opinion, notwithstanding the radiological evidence, then they should include this issue in the *Daubert* hearing on the "Timing of the Onset of Stroke," if they set such a hearing. Otherwise, this portion of the motion is granted. Please note that by excluding those opinions the Court is determining that neither side may use them.

**Sheriff Mink's Motion in Limine to Exclude All Evidence Related to Direct Liability Against the Sheriff [ECF No. 138].**

The motion is DENIED, but this should not be read as a ruling that all such evidence is necessarily admissible. In the first place I question the Sheriff's standing to make this motion. By its terms the motion seeks exclusion of evidence related to the Sheriff's direct liability. However, the Court dismissed plaintiff's direct liability claim against the Sheriff. The Sheriff has an interest only in the sense that there is a theoretical possibility that the Sheriff could be required to pay a portion or even all of a judgment against CHC on the constitutional claim if CHC is unable to do so.

The Sheriff's primary argument is that the evidence related to direct liability against him is no longer relevant to the plaintiff's case. The Court disagrees. At least some of the evidence that is covered by this motion (the contract, the pre-stroke MAC meetings attended by CHC personnel) is potentially relevant to plaintiff's claim that CHC had a policy or custom of providing inadequate training or supervision due to financial pressures. I am not yet convinced, however, that evidence of meetings that occurred after the stroke are necessarily probative of CHC's policies or customs before the stroke occurred. They could be, but the Court will address those issues if and when plaintiff offers specific pieces of this evidence at trial.

As an alternative to its relevance argument the Sheriff suggests that the relevance of the evidence is substantially outweighed by the danger of jury confusion or wasting time. I am left to wonder, however, how the jury would be confused or how any confusion would be so prejudicial to the Sheriff as to cause the Court to exclude the evidence under Rule 403. The Court will not permit any waste of time.

**Plaintiff's Motion to Preclude Dr. Brill From Giving Neurological Expert Testimony Regarding Causation that is Outside his Scope as a Treater and Not Properly Designated [ECF No. 140].**

This motion is GRANTED. Dr. Brill may testify concerning his qualifications, his role and responsibilities at the jail, policies and procedures at the jail concerning the provision of medical care to inmates, and his participation in the events of September 17 and 18, 2012. The latter includes the bases for opinions that he formed and decisions that he made at the time concerning the condition, care, and treatment of the patient. He may not be asked questions that extend beyond those limits, such as, for example, standard of care questions concerning nurses or other staff or whether he agrees or disagrees with other testimony. The Court finds, first, that CHC staked out a position on this subject in a successful motion for a protective order in this case that is consistent with the foregoing limitations, and it thus successfully limited the areas of inquiry permitted the plaintiff's lawyers in Dr. Brill's deposition. CHC will not be heard now to take a position inconsistent with the earlier position and the Court's order that CHC requested.

Second, to the extent Dr. Brill would be asked question that go beyond the foregoing subjects, he becomes the equivalent of a retained or specially employed expert, but CHC has not (per plaintiff's representation) provided the disclosure required by Fed. R. Civ. P. 26(a)(2)(B).

5

**Defendants Correctional Healthcare Companies, Inc., Correctional Healthcare Physicians, P.C., CHC Companies, Inc. and Gina Battenhouse's Motions in Limine [ECF No. 141].**

This motion is GRANTED IN PART AND DENIED IN PART.

A. <u>Any evidence of prior lawsuits against CHC Defendants</u>.

To begin, the Court's understanding of plaintiff's position is that CHC had policies or customs in three related areas: (1) a widespread and well-settled practice of presuming that subjective complaints of Inmates -- i.e., those which cannot be readily confirmed by objective evidence -- are invalid, and thus not providing prompt attention to such complaints; (2) a failure to adequately train or supervise nurses and other employees with respect to responding to subjective complaints; and (3) the ratification by final policymakers of the decisions of subordinates who respond to subjective complaints of inmates in that manner.

Linking these alleged policies or customs together is plaintiff's contention that CHC was motivated by a desire to limit costs which in turn motivated CHC to avoid sending inmates out for care in a hospital or by another outside provider. Plaintiff contends that this attention to financial considerations went beyond prudent management and resulted in times where inmates were denied immediate and urgent care, Mr. McGill being an example. Based on these practices plaintiff seeks to establish CHC's liability for Nurse Battenhouse's allegedly unconstitutional acts and to convince the jury to award punitive damages on the state common law claim.

In its motion CHC cites law to the effect that evidence of previous complaints is not necessarily indicative of a policy or custom sufficient to deliberate indifference. I agree. CHC appears to concede, however (and cites law supporting its concessions) that a previous complaint might be relevant for the purpose of proving an entity's deliberate indifference if the complaint

was meritorious but CHC ignored it. Motion at 4. Put another way, if it could be shown that CHC had a practice of sweeping meritorious complaints "under the rug" and continuing to tolerate the same wrongful practices, the evidence would be probative on both the constitutional claim and the prayer for punitive damages. To be admissible the previous complaints must bear a factual resemblance to the circumstances involved in the present case. But if these criteria are met, then evidence of other incidents may be admitted. *See, e.g.*, *Cannon v. City and Cnty of Denver*, 998 F.2d 867, 877–78 (10th Cir. 1993).

Defendant lists five incidents that it anticipates plaintiff might wish to use. I agree with defendant's objections to the first three, but plaintiff's response does not identify those three as incidents of interest for trial purposes. Rather, plaintiff's response lists two matters which he contends have a tendency to show the existence of one or more of the policies or customs that he attributes to CHC. Assuming that plaintiff can present competent evidence of the following incidents, this Court concludes that evidence of the following incidents appears to be relevant based upon plaintiff's description:

1. *Revilla v. Glanz*, No. 4:13-cv-00315-JED-TLW (N. D. Okla.). Based on the allegations of the complaint (a copy of which can be found docketed in the present case at ECF No. 148-1), which is all I have to go on at this point, three inmates died and a fourth came close to death as the result of CHC's indifference to their requests for medical assistance and delays in providing competent treatment. Plaintiff argues, and based on the complaint I agree, that the alleged facts concerning three of the four inmates appear to be relevant to the policy or custom allegation. Plaintiff also notes a series of reviews of CHC's practices at that jail by the Department of Justice and others, occurring before the *Revilla* incidents and the McGill incident. Defendant

objects on the basis that the Oklahoma lawsuit was filed more than a month after the present suit was filed. The dates of the filings of the lawsuits are irrelevant. Two of the three incidents occurred before the McGill incident, and I see no reason why the fourth incident (which occurred shortly after the McGill incident) is not relevant to CHC's policies or customs in the timeframe of the McGill incident. Defendant also argues that the Oklahoma jail was managed differently than the Jefferson County Detention Facility. Defendant does not explain why the differences, if they exist, make evidence of CHC's conduct inadmissible. At most the differences would go to weight, not admissibility of the evidence.

2. *Lara-Williams/Burke v. Glanz*, No. 4:11-cv-00720-JED-PJC (N. D. Okla.). According to plaintiff, an inmate died after CHC medical staff determined that he was faking paralysis (and videotaped him in a medical observation room to show that he was faking, which he was not), meanwhile ignoring his deteriorating and dehydrated condition. Plaintiff points to deposition testimony of Dr. Herr, Chief Medical Officer of CHC, who was uncertain as to the extent to which this incident and the staffs' errors were communicated across the CHC system, including to the staff in the Jefferson County Detention Facility. Defendants' motion indicates that the case was voluntarily dismissed (the case record indicates that the claims against CHC were settled), and that training was done at the Tulsa jail after the incident.

CHC argues that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice such that the evidence should be excluded under Rule 403. The advisory committee suggested that unfair prejudice "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an improper one." It "cannot

8

be equated with testimony which is simply unfavorable to a party." *McEwen v. City of Norman, Okla.*, 926 F.2d 1539, 1549 (10th Cir. 1991). I agree with CHC that the video of Mr. Williams dying in the *Lara-Williams/Burke* matter has relatively little relevance and creates a significant risk of unfair prejudice through an emotion-driven decision. Otherwise, I am not persuaded. Proof of an entity's customs and practices is difficult, and the significance of the Oklahoma incidents (again assuming there is competent proof of what occurred) appears to me to be great. While any evidence of mistreatment of a human being inevitably has an emotional component, the Court finds that evidence of CHC's actions in the other incidents (excluding the potentially inflammatory video) is not substantially outweighed by the danger of <u>unfair</u> prejudice.

    B. <u>Any testimony or evidence by a witness commenting that Defendants "consciously disregarded" a serious medical need</u>.

I agree with CHC that the term "consciously disregarded" expresses an opinion on an individual's state of mind (intent) that is inappropriate for expert opinion testimony. *See, e.g.*, *Isom v. Howmedica, Inc.*, No. 00 C 5872, 2002 WL 1052030, at *1 (N.D. Ill. May 22, 2002). Plaintiff's experts can express their opinions about the appropriateness of nurses' actions based on facts in evidence (for example, what was shown or told to the nurse, what the nurse did, what the nurse said) and opinions on the standard of care and whether the nurse's conduct fell below the standard of care. If appropriate, they can express opinions based upon assumed facts (there must be evidence supporting the assumed facts). This can be done without speculating on the nurse's intent. That is an inference about which the lawyers can argue in closing statements and that the jury will ultimately determine whether to draw. The ruling applies to both parties and their experts, not just plaintiff's experts.

**Plaintiff's Motion to Preclude Expert Evidence Related to Dismissed and/or Settled Claims [ECF No. 142].**

This motion is GRANTED. Plaintiff asks the Court to exclude as irrelevant "evidence" (1) that the plaintiff initially named Dr. Brill as a defendant but later dismissed his claim against Dr. Brill; (2) that Mr. McGill's wife was initially named a party plaintiff, but her claims were voluntarily dismissed; and (3) that certain of plaintiff's claims against Jefferson County have been resolved or dismissed by the Court. Defendant responds that this evidence is relevant to CHC's nonparty tortfeasor designation. CHC points out that in its Answer to the Second Amended Complaint, it stated, "In the event of a settlement between Plaintiff and any other Defendant or nonparty tortfeasors, and/or in the event of a dismissal of a party without payment, this paragraph constitutes the Defendant' notice of designation pursuant to C.R.S. § 13-21-111.5."

Colorado law permits a party to designate non-parties whom they contend are "wholly or partially at fault," and in an appropriate case, the jury could allocate a portion of the negligence or fault to the nonparty. C.R.S. § 13-21-111.5(3)(b). Such an allocation does not, of course, impose liability on a nonparty, but it reduces the comparative fault of the designating defendant. This would not apply to the constitutional claim but could, in theory, apply to plaintiff's negligence claim.

In the first place, I question whether that is a proper way to designate a nonparty tortfeasor, keeping in mind that there has to be a good faith basis in fact and law under Rule 11 to make such a designation. But assuming for the sake of argument that it might have been a proper designation, it stumps me (and CHC does not explain) how the fact that Dr. Brill or Ms. McCracken were once parties to the case would be probative of a claim that their negligence or

other actions were contributing causes of Mr. McGill's injuries. Nor would the fact that there were other claims against the Jefferson County defendants be proof of their fault.

Even more basically, CHC offers no evidence (nor could it, I suspect) that anything Ms. McCracken ever did could be viewed as negligence or fault contributing to Mr. McGill's injuries. CHC offers no evidence (nor do I imagine it would wish to offer evidence) that Dr. Brill was negligent or at fault. Keep in mind that CHC's same lawyers represented Dr. Brill in this case; they admitted that he was an employee of the CHC defendants [ECF No. at ¶ 26]; and they denied that he was negligent [*id.* ¶ 255]. Moreover, even if they could prove negligence on the part of Dr. Brill, such fault would presumably be attributable to CHC through *respondeat superior* liability. I suspect Dr. Brill would be rather surprised and disappointed, to say the least, to find that CHC and its lawyers have turned on him. And one cannot just designate a nonparty and expect to have fault assigned. The designating party must present evidence that the nonparty's fault contributed to the plaintiff's injuries. *See Barton v. Adams Rental, Inc.*, 938 P.2d 532, 536 (Colo. 1997).

As for any alleged negligence of Jefferson County, I again find it improbable that CHC seriously intends to present evidence that the Sheriff's Office, with which it contracts to provide medical care to inmates, was negligent in some way. CHC does not hint at any such evidence. There was no indication in the recent trial preparation conference that CHC intended to present evidence of negligence or fault against the Sheriff's Office. No jury instructions on such a claim were tendered. And, if CHC were to attempt to take such a position, they would run squarely into this Court's ruling that the Sheriff's Office has no direct liability for the injuries suffered by Mr. McGill.

It appears to this Court that CHC might hope subtly to sully the plaintiff or Dr. Brill or the Sheriff without actually accusing any of the nonparties of negligence or presenting any evidence of negligence in the hope that the jury might, if invited to do so, allocate some fault to one or more of them and thereby reduce CHC's proportionate negligence. That is not going to happen. The plaintiff's motion is granted.

DATED this 20th day of November, 2014.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge