**Instruction No. 1**

The Court will now instruct you on the claims and defenses of the parties and the law applicable to this case.

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment. Among other things, this constitutional right protects inmates from "deliberate indifference" to a serious medical need by officials working in a jail or detention facility.

The plaintiff, Kenneth McGill, was an inmate in the Jefferson County Detention Facility on September 17 and 18, 2012. Defendant Correctional Healthcare Companies, Inc., sometimes referred to as "CHC," is a private corporation with which the Jefferson County Sheriff contracted to provide medical care to inmates in the facility.

The plaintiff claims that a nurse employed by CHC, Gina Battenhouse, acted with deliberate indifference and thereby violated his Eighth Amendment rights by the manner in which she responded to signs and symptoms that he was experiencing a stroke and to concerns expressed by Mr. McGill, other inmates, and deputy sheriffs. The plaintiff claims that CHC is liable for Nurse Battenhouse's constitutional violations because she was carrying out policies or customs of CHC. The plaintiff claims that the CHC policies or customs that Ms. Battenhouse was carrying out and that caused his injuries were (1) a custom of nurses disregarding serious subjective complaints of inmates and practicing outside their scope as nurses by not calling a doctor or 911 without sufficient objective evidence; and (2) the failure of CHC to provide adequate training or supervision of its nursing staff. The plaintiff claims that CHC's policies and customs were motivated, at least in part, by financial concerns rather than inmate welfare.

_Final Instructions Given_

_Brock Jackson_ 12/15/14

In addition to the Eighth Amendment claim, the plaintiff asserts a negligence claim under state law. CHC, as all of the involved nurses' employer, would be responsible for their negligence, if any, and any damages caused by their negligence, if any, regardless of any policies or customs that CHC might have.

The plaintiff claims that the failure timely to diagnose and treat his stroke has resulted in serious and permanent injuries that otherwise probably would not have occurred. He seeks an award of compensatory damages against Nurse Battenhouse and against CHC. The plaintiff further claims that these defendants' actions were so callous, deliberately indifferent or so willful and wanton as to support an award of punitive damages in addition to compensatory damages.

CHC and Nurse Battenhouse deny that she or any other CHC employee was deliberately indifferent to Mr. McGill's medical needs. Rather, they claim that Nurse Battenhouse and other nurses on duty on the night of September 17, 2012 responded appropriately to the information they had, and that they called for a doctor when they determined that his symptoms were sufficiently serious. The doctor then sent Mr. McGill out for emergent care in a hospital after determining that this was appropriate. CHC denies that it had any unconstitutional policy or custom as alleged by the plaintiff. CHC argues that neither CHC nor its employees ever deprived an inmate of necessary medical care for cost-saving reasons. While denying that the care was inappropriate, these defendants also contend that by the time Nurse Battenhouse first saw Mr. McGill it was already too late for him to receive medication for a stroke, such that any delay of treatment that might be attributed to them was not a cause of his injuries. They deny that any compensatory or punitive damages should be awarded against them.

The Jefferson County Sheriff's Office and Sheriff Ted Mink, not personally but in his official capacity as the elected Sheriff, have also been named as defendants in this case. As a matter of law, the Sheriff's Office is responsible for providing adequate medical care to inmates in its detention facility. The Jefferson County Sheriff's Office has contracted with CHC to directly provide this medical care and it is jointly and severally liable with CHC for any failure by CHC or its employees to provide constitutionally appropriate care. Therefore, the Sheriff's Office will be jointly and severally liable for any compensatory damages that might be awarded to the plaintiff against CHC or Ms. Battenhouse if they are found to have acted with deliberate indifference to Mr. McGill's medical needs. The Sheriff's Office and Sheriff Mink are not liable for any punitive damages that might be awarded, nor are they liable for any damages that might be awarded based on the alleged negligence of Ms. Battenhouse or CHC. This is because the Sheriff's Office delegated its constitutional duty to provide adequate medical care to CHC, and retains the ultimate legal responsibility to provide the care, but it is not responsible with respect to the separate negligence claim that was asserted solely against CHC and Ms. Battenhouse. I mention these things here simply by way of explanation as to why the Sheriff defendants are in the case. There will be nothing for you, the jury, to decide with respect to the Jefferson County Sheriff's Office or Sheriff Mink.

These are brief summaries of the claims and defenses. The specific elements of the claims and defenses are set forth in the instructions to follow. First, the Court will give you general instructions of a type that are commonly used in most civil cases. Next, the Court will provide instructions specific to the claims and defenses of the case, including instructions concerning damages that you will need to follow in the event that you decide that the plaintiff

has proven that he is entitled to an award of damages. Finally, the Court will provide you with a verdict form and instructions relating to your deliberations and entry of your verdict.  All of these instructions are equally important, and together they constitute the law of this case that you must follow.

**Instruction No. 2**

Mr. McGill, as the plaintiff in this case, has the burden of proving all the required elements of his claims by a preponderance of the evidence. This means that the evidence must be sufficient to convince you that what the plaintiff claims is more likely true than not. It is not sufficient for the plaintiff to prove that his version of the events "might" be true or even to prove that it is "as likely to be true" as another version.  If the plaintiff fails to meet his burden to show that his version of the events is more likely true, your verdict must be for the defendants.

You may have heard the term "proof beyond a reasonable doubt." That is a stricter standard than preponderance of the evidence.  The higher reasonable doubt standard applies only to Plaintiff's request for punitive damages under its state law negligence claim.

**Instruction No. 3**

The evidence from which you are able to decide the facts consists of:

1. The sworn testimony of the witnesses;

2. The exhibits that have been received into evidence;

3. Any facts to which the lawyers have agreed or stipulated; and

4. Any other facts you have been instructed to treat as true.

These categories of evidence are sometimes referred to as "direct" evidence. However, while you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in light of your experience. In other words, you should use your reason and common sense to make deductions and reach conclusions as to the facts.

Inferences that can reasonably be drawn from the direct evidence are sometimes referred to as "circumstantial" evidence. The law makes no distinction between the effects of direct and circumstantial evidence. There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence. The plaintiff asks you to draw one set of inferences, while the defendants ask you to draw another. It is for you, and you alone, to decide what inferences you will draw.

Any finding of fact you make must be based on probabilities, not possibilities. Facts may not be based on surmise, speculation or conjecture.

**Instruction No. 4**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe and the weight to be given to the testimony. You may believe everything a witness says, or part of it, or none of it. In evaluating the testimony of any witness, you may consider many factors, including:

1. The opportunity and ability of the witness to see or hear or know the things testified to;

2. The witness' memory;

3. The reasonableness or unreasonableness of a witness' testimony;

4. The witness' manner while testifying;

5. The witness' interest in the outcome of the case and his or her bias or prejudice;

6. Consistency or lack of consistency in the witnesses' testimony;

7. Whether other evidence contradicted the witness' testimony;

8. The reasonableness of the witness' testimony in light of all the evidence; and

9. All other facts and circumstances shown by the evidence, that affect the credibility of the witness.

The weight of evidence is not necessarily determined by the number of witnesses testifying to a particular fact.

**Instruction No. 5**

A witness' testimony may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness said or did something inconsistent with the testimony or failed to say or do something that you consider to be inconsistent. If you believe any witness' testimony has been discredited for any of these reasons, you can give the testimony whatever weight it deserves in light of the circumstances. If you believe that a witness has testified falsely concerning any material matter, you may distrust such witness' testimony in other particulars, reject it altogether, or give it such weight as you may think it deserves.

**Instruction No. 6**

There are certain things that are **not evidence**, and you may not consider these things in
determining facts.

1.      Statements, arguments, questions, or objections by the attorneys are **not evidence**.
Lawyers have an obligation to make statements and arguments, to ask questions, and to object to
evidence that they believe is improper under the rules of evidence—in other words, out of
bounds. Do not be influenced by any evidentiary objection, my ruling on it, or the frequency of
objections made by any attorney. If the objection is sustained, you should ignore the answer to
the question; if I overrule the objection, treat the answer like any other.

2.      Instructions or admonitions to counsel are **not evidence**. They are imposed to
assure that the trial process is proper.

3.      If I tell you to disregard a particular statement, **that statement is not evidence**.
You must put that statement out of your mind and not consider it for any purpose. In some
instances, you may be instructed that the evidence can be received for a particular purpose only.
In that case, you must consider it only for the particular purpose specified.

4.      Anything you see or hear outside the courtroom is **not evidence**. You must limit
yourself to the evidence presented here in the courtroom.

During the course of the trial, people may enter and leave the courtroom or counsel
tables. You should not concern yourself with this—**it is not evidence**.

**Instruction No. 7**

Ordinarily, witnesses must be people who have seen, heard, or otherwise perceived the
events at issue. However, certain witnesses, because of their specialized training, knowledge, or
experience, are permitted to offer testimony in the form of their opinions about certain matters.

As with any other witness, it is up to you to evaluate these witnesses' testimony based on
the instructions the court has previously given you. In addition, in deciding whether to accept
these witnesses' opinions, you should also consider the witness' training, knowledge, and
experience; the facts that the witness relied upon; and the reasons given by the witness for the
opinions. You should not, however, accept opinion testimony merely because I allowed the
witness to testify concerning his or her opinion.  Nor should you substitute it for your own
reason, judgment, and common sense.

You may believe all, part, or none of a witness' opinion testimony; and you may give the
testimony such weight that you feel is appropriate.

**Instruction No. 8**

You must not be influenced by sympathy, bias, or prejudice for or against any party in

this case.

**Instruction No. 9**

The last several instructions were what the Court has called "general instructions." The next series of instructions concern the specific elements of what the plaintiff must prove by a preponderance of the evidence in order to establish a violation of Mr. McGill's rights under his Eighth Amendment constitutional and state law claims.

**Instruction No. 10**

Plaintiff claims that Nurse Battenhouse was deliberately indifferent to his serious medical

needs and thereby violated the Eighth Amendment. The test for Eighth Amendment liability for

deliberate indifference to a serious medical need involves both an objective and a subjective

component.

To satisfy the objective component, the plaintiff must prove by a preponderance of the

evidence that the deprivation of medical care or a delay in providing medical care was

"sufficiently serious." The purpose of the objective component is to limit claims to significant,

as opposed to trivial, suffering. A medical need is sufficiently serious if the failure to treat it or a

delay in treating it was a cause of substantial harm to the inmate. Substantial harm can be a

lifelong handicap, a permanent loss, or considerable pain.

The subjective component of a deliberate indifference claim concerns the defendant's

state of mind. It does not require proof that Nurse Battenhouse intended that Mr. McGill suffer a

serious injury, but it does require more than mere negligence. The subjective component is

satisfied if the plaintiff proves by either direct or circumstantial evidence that Nurse Battenhouse

knew that there was a high probability that Mr. McGill was suffering from a serious medical

condition, and that failure to treat his condition was creating a substantial risk of serious harm to

him. The plaintiff must prove that Nurse Battenhouse was personally involved in the conduct

that Mr. McGill complains about. You must not hold Nurse Battenhouse liable for what other

employees did or did not do.

If you find that the plaintiff has proven both the objective and the subjective components,

and therefore has proven that Nurse Battenhouse was deliberately indifferent to Mr. McGill's

serious medical needs, and you find that her deliberate indifference was a cause of injuries,

damage, or losses to Mr. McGill then your verdict on the Eighth Amendment claim must be for

the plaintiff.  On the other hand, if you find that either the objective component or the subjective

component (or both) was not established or that any deliberate indifference was not a cause of

injuries, damages or losses to Mr. McGill then your verdict on the deliberate indifference claim

must be for Nurse Battenhouse.

**Instruction No. 11**

The word "cause" as used in these instructions means an act or failure to act that in natural and probable sequence produced the claimed injury. It is a cause without which the claimed injury would not have happened.

If more than one act or failure to act contributed to the claimed injury, then each act or failure to act may have been a cause of the injury. A cause does not have to be the only cause or the last or nearest cause. It is enough if the act or failure to act joins in a natural and probable way with some other act or failure to act to cause some or all of the claimed injury.

**Instruction No. 12**

Plaintiff contends that CHC should be held liable for any deliberately indifferent actions of Nurse Battenhouse that were a cause of injures, damages, or losses to Mr. McGill. Unlike plaintiff's negligence claim, which is the subject of later instructions. CHC is not liable for an employee's unconstitutional acts merely because those alleged acts were committed while the employee was working on the job.  CHC is not liable for any unconstitutional action by Nurse Battenhouse unless she was carrying out a policy or custom of CHC and, while doing so, she caused the injuries, damages, or loses claimed by the plaintiff in this case.

In this case the plaintiff claims that Nurse Battenhouse was acting pursuant to a policy or custom of CHC, as described in the next two instructions.

**Instruction No. 13**

Plaintiff contends that CHC had a policy or, at least, an informal custom amounting to a widespread practice that, although not authorized by written law or express company policy, was so permanent and well settled as to constitute a custom or usage with the force of law. Specifically, the plaintiff contends that CHC had a policy or custom whereby ~~an~~ when an inmate presented to the nursing staff with subjective complaints of a serious medical condition, that even if the nurse suspected that the inmate might be suffering from a condition requiring urgent review by a doctor, the nurse would not call the on-call doctor or call 911 or send the patient to the hospital unless and until the nurse was satisfied that there was objective evidence that the inmate was probably suffering from the condition.

The custom or policy must have existed before the incident in question, and must have been a cause of the nurse's deliberately indifferent conduct and ultimately a cause of the injuries, damages, or losses claimed by the inmate. However, post-incident conduct may provide circumstantial evidence regarding pre-existing customs or practices. The parties have stipulated that Dr. Herr is a final decision maker who acts on behalf of CHC.

**Instruction No. 14**

The plaintiff's other claim of CHC policy or custom concerns training and supervision. In order to hold CHC liable for inadequate training or supervision under the Eighth Amendment, you must find that the plaintiff has proved each of the following three things by a preponderance of the evidence:

First: CHC's training program was inadequate to properly train CHC medical personnel, or CHC failed to properly supervise its personnel to handle the usual and recurring situations with which they must deal;

Second: CHC consciously disregarded the consequences of its acts or omissions with respect to training or supervision of its nurses;

Third: CHC's failure to properly train or supervise was a cause of the violation of Mr. McGill's constitutional rights and injuries, damages or losses.

If you find all of the above elements against CHC, then the plaintiff has proven his claim of deliberate indifferent training against CHC. If you find that the plaintiff has not established these elements, then your verdict must be for CHC on this claim.

**Instruction No. 15**

Plaintiff also asserts that CHC was negligent, which is determined by a different standard than the Eighth Amendment claim.  In this case, the plaintiff claims that CHC was negligent through the acts of the Registered Nurse and Licensed Practical Nurse Employees. CHC, as the nurses' employer, is legally liable for their negligence.

For the plaintiff to recover from CHC on his claim of negligence, you must find that all of the following have been proved by a preponderance of the evidence:

1.  The plaintiff had injuries, damages, or losses;

2.  The defendants were negligent (as defined in Instruction 16); and

3.  The defendants' negligence was a cause of the plaintiff's injuries, damages, or losses (as defined in Instruction 11).

If you find that any one or more of these statements has not been proven, then your verdict must be for CHC.  If you find that all three of these statements have been proved, then your verdict on the negligence claim must be for the plaintiff.

**Instruction No. 16**

A Registered Nurse or Licensed Practical Nurse is negligent when a Registered Nurse or

Licensed Practical Nurse does an act that reasonably careful Registered Nurse or Licensed

Practical Nurse would not do, or fails to do an act that reasonably careful Registered Nurses or

Licensed Practical Nurses would do. To determine whether a Registered Nurse or Licensed

Practical Nurse conduct is negligent, you must compare that conduct with what Registered Nurse

or Licensed Practical Nurse, having and using that knowledge and skill of a Registered Nurse or

Licensed Practical Nurse at the same time, would or would not have done under the same or

similar circumstances.

**Instruction No. 17**

The CHC defendants are corporations and can act only through their officers and
employees. All of the nurses, physician assistants, and medical administrators involved in this
matter were employees of CHC at the time of this occurrence.  Therefore any act or omission of
the employee(s) was the act or omission of CHC for purposes of plaintiff's negligence claim.

**Instruction No. 18**

A nurse employed to treat a patient implicitly represents that (1) she possesses that
reasonable degree of learning and skill which is ordinarily possessed by others of her profession;
(2) she will use reasonable and ordinary care and diligence in the exercise of her skill and the
application of her knowledge to accomplish the purpose for which she is employed; and (3) she
will use her best judgment in the application of her skill in deciding upon the nature of a patient's
illness and the best manner of responding to it.  This is what is meant when we say that a nurse
must comply with the standard of care applicable to the nurse, that is, a registered nurse must
comply with the standard of care applicable to registered nurses, and a licensed practical nurse
must conform to the standard of care applicable to licensed practical nurses.

An unsuccessful outcome does not, by itself, mean that a nurse was negligent. Likewise,
an exercise of judgment that results in an unsuccessful outcome does not, by itself, mean that a
nurse was negligent. However, if an unsuccessful outcome resulted from an exercise of judgment
that a reasonable nurse of similar learning and skill, acting in compliance with the applicable
standard of care, would not have made in the same or similar circumstances, then the exercise of
judgment would be negligent.

**Instruction No. 19**

In considering whether a nurse or licensed practical nurse has exercised ordinary and
reasonable care in treating the plaintiff you cannot set up a standard of your own, but must be
guided in that regard solely by the testimony of the experts who have appeared in this action and
in accordance with the instructions of the Court as to the standard of care of registered nurses or
licensed practical nurses.

## Instruction No. 20

Liability for one's conduct must be determined in the light of what was apparent at the
time, not what is obvious in hindsight. Therefore, in determining whether a nurse exercised the
degree of learning and skill which is ordinarily possessed by others of her profession, the
relevant focus must be on what a reasonable nurse would have done in the light of the facts and
circumstances known, or that should have been known, to the nurse at the time, excluding the
benefit of hindsight.

**Instruction No. 21**

The next group of instructions concerns damages.

**Instruction No. 22**

If you find that the plaintiff has proven his negligence or constitutional claims, then you

must determine the damages, if any, that were caused by the defendants' violation(s). Plaintiff

has the burden of proving by a preponderance of the evidence the nature and extent of his

damages. To explain the appropriate measure of damages, the Court first must explain the nature

of the damages that may be awarded and against whom they may be awarded.

Damages may only be awarded against defendants, if any, whom you have found to be

liable on the claims, as I have explained them.  The law provides for the following types of

damages:

1.  Past damages, including the following categories:

    a.  Medical and other health care expenses to date;

    b.  Lost earnings to date;

    c.  Physical injury and impairment, suffering, inconvenience, and discomfort that

       he has suffered to date;

    d.  Non economic losses, including emotional distress, mental anguish, and

       impairment of his quality of life to date.

2.  Future damages, including:

    a.  Future medical and other health care expenses;

    b.  Lost future earnings (and lost earning capacity);

    c.  Future life care costs;

    d.  Future physical injury and impairment, including future life care costs, pain

       and suffering, inconvenience, and discomfort;

     e.  Future non economic losses, including emotional distress, mental anguish, and

impairment of his quality of life:

The categories above are types of "compensatory damages." Compensatory damages

seek to make the plaintiff whole – that is, to compensate him for damage suffered due to the

defendants' violation of his rights.

Any damages that you award for "compensatory damages" must be awarded jointly and

severally against each defendant who violated Mr. McGill's rights.

**Instruction No. 23**

If you find that the plaintiff, Kenneth McGill, has had compensatory damages, then you

must consider whether the defendants, CHC and Gina Battenhouse, have proved their affirmative

defense of plaintiff's failure to mitigate or minimize damages.  The plaintiff has the duty to take

reasonable steps under the circumstances to mitigate or minimize his damages.  Damages, if any,

caused by plaintiff's failure to take such reasonable steps cannot be awarded to the plaintiff.

This affirmative defense is proved if you find the following has been proven by a

preponderance of the evidence:

1.  The plaintiff failed to take reasonable steps to return to employment in a job with similar

earning capacity to the job he was employed in prior to his injury;

2.  The plaintiff has the ability to return to employment in a job with similar earning capacity

to the job he was employed in prior to his injury; and

3.  The plaintiff has increased damages because he failed to take reasonable steps to return to

employment in a job with similar earning capacity to the job he was employed in prior to his

injury.

If you find that any one or more of these propositions has not been proved by a

preponderance of the evidence, then you shall make no deduction from plaintiff's damages. On

the other hand, if you find that all of these propositions have been proved by a preponderance of

the evidence, then you must determine the amount of damages caused by the plaintiff's failure to

take such reasonable steps.  This amount must not be included in your award of damages.

**Instruction No. 24**

At the beginning of trial, Mr. McGill was 46 years old. According to the U.S. Census Life Expectancy Table of mortality, the life expectancy in this country of Mr. McGill is 32.7 years.

Life expectancy, as shown by a mortality table, is merely an estimate of the probable average remaining length of life of all persons in the United States of a given age and sex. That estimate is based upon a limited record of experience. The inference that may reasonably be drawn from life expectancy as shown by the table applies only to one who has the average health and exposure to danger of people of that age and sex.

In determining the reasonably certain life expectancy of Mr. McGill, you should consider, in addition to what is shown by the mortality table, all other facts and circumstances in evidence in the case bearing upon the life expectancy of Mr. McGill, including Mr. McGill's occupation, habits, past health record, and present state of health.

When considering life expectancy, in determining any reasonably certain future damage, you will bear in mind, of course, the distinction between entire-life expectancy and work-life expectancy.

Those elements of damage that related to future income should be measured only by Mr. McGill's remaining work life expectancy, not Mr. McGill's entire life expectancy.

**Instruction No. 25**

The plaintiff also seeks an award of punitive damages against Nurse Battenhouse and also against CHC. The purpose of punitive damages is to punish the wrongdoer and to serve as an example to others not to engage in such conduct. In considering any award of punitive damages you must apply the standards that are set forth in this instruction. Please be careful to note that the standards are different as between the defendants and the underlying legal claims.

First, with respect to the claim against Nurse Battenhouse for acting with deliberate indifference to a serious medical need in violation of Mr. McGill's Eighth Amendment rights, an award of punitive damages may be made if you find, by a preponderance of the evidence, that (1) she did violate plaintiff's Eighth Amendment rights; (2) her violation was a cause of injuries and damages to the plaintiff; and (3) her conduct was motivated by an evil motive or intent, or that it involved reckless disregard or callous indifference to the constitutionally protected rights of the plaintiff.

Second, with respect to the claim against CHC for acting with deliberate indifference to a serious medical need in violation of Mr. McGill's Eighth Amendment rights, an award of punitive damages may be made if you find, by a preponderance of the evidence, that (1) a CHC policy or custom resulted in the violation of plaintiff's constitutional rights; (2) the violation was a cause of injuries and damages to the plaintiff; and (3) CHC's conduct was motivated by an evil motive or intent, or that it involved reckless disregard or callous indifference to the constitutionally protected rights of the plaintiff.

Third, with respect to the claim against CHC for negligence, an award of punitive damages may be made if you first find that (1) by a **preponderance of the evidence**, at least one

CHC employee was negligent in the provision of medical care to the plaintiff; (2) by a

**preponderance of the evidence**, the negligence was a cause of injuries and damages to the

plaintiff; and (3) **beyond a reasonable doubt**, the negligent conduct that was a cause of injuries

and damages to the plaintiff resulted from willful and wanton conduct by CHC. "Willful and

wanton conduct" means an act or omission purposefully committed by a person or entity that

must have realized that the conduct was dangerous, and which conduct was done heedlessly and

recklessly, either without regard to the consequences, or without regard to the rights and safety

of others, particularly plaintiff Kenneth McGill. In this case the plaintiff contends that CHC,

through its decision makers and managers, approved of "willful and wanton conduct" of one or

more of its nurses, and/or that it engaged in "willful and wanton conduct" in its training and

supervision of the nurses.

**Instruction No. 26**

Reasonable doubt means doubt based upon reason and common sense that arises from a fair and thoughtful consideration of all the evidence, or the lack of evidence, in the case. It is not a vague, speculative, or imaginary doubt, but one that would cause reasonable persons to hesitate to act in matters of importance to themselves.

With respect to his state law negligence claim, the plaintiff must prove punitive damages against CHC beyond a reasonable doubt. All claims and other punitive and compensatory damages are to be evaluated by the preponderance of the evidence standard defined in Instruction 2.

**Instruction No. 27**

Difficulty or uncertainty in determining the precise amount of any damages does not prevent you from deciding an amount. You should use your best judgment based on the evidence.

The fact that instructions on damages are being given to you does not mean that the Court is instructing the jury to award or not to award damages.

**Instruction No. 28**

In order to return a verdict, it is necessary that all jurors agree; your verdict must be unanimous. It is your duty, as jurors, to consult with one another, and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. You must each evaluate the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinions if you are convinced they are erroneous. But do not surrender your honest conviction as to the weight or effect of the evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times that you are not partisans. You are judges—judges of the facts. Your role is to seek and determine the truth based on the evidence presented to you.

**Instruction No. 29**

Upon retiring to the jury room, you will select one of your members to act as your foreperson who will preside over your deliberations. Your foreperson will write and sign questions that you might have for the Court during your deliberations and will be your spokesperson in the courtroom.